UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DE'CARLOS J. FREEMAN, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:05-CV-398 RM |
| ANDREW TAGHON and THOMAS TEETER, | ) ) ) ) | |
| Defendants | ) | |

## OPINION and ORDER

On July 1, 2005, Plaintiff De'Carlos Freeman filed a complaint under 42 U.S.C. § 1983 against the State of Indiana, Deputy Prosecutor Kenneth Cotter, and St. Joseph County Police Officers Andrew Taghon and Thomas Teeter. The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed Mr. Freeman to proceed against Officer Taghon for excessive use of force and Officer Teeter for illegal search and seizure. On March 20, 2006, Mr. Freeman amended his complaint to add a claim of detention without probable cause against Officer Taghon. Officers Taghon and Teeter currently have a motion for summary judgment pending before the court. The defendants argue that they complied with the law, that they are entitled to qualified immunity, and that the plaintiff has failed to allege an injury. For the following reasons, the court denies the defendants' motion.

FACTUAL BACKGROUND

On March 30, 2004, De'Carlos Freeman was driving in South Bend when St. Joseph County Police Officer Andrew Taghon pulled up directly behind him at an intersection. Mr. Freeman was known to Officer Taghon since the St. Joseph County Police Department had arrested him 23 times between November 17, 1998 and March 30, 2004. Officer Taghon says Mr. Freeman wasn't wearing his safety belt as required by Indiana law and he proceeded to instigate a traffic stop by turning on his red and blue emergency lights. Officer Taghon also advised all county patrol officers by way of radio message that he was stopping a red GEO Storm vehicle. Mr. Freeman, however, continued driving westward over the river until finally turning southward on Glenview Drive. Mr. Freeman then parked the vehicle five or six feet away from the curb, got out of the vehicle and began walking towards the patrol car. Mr. Freeman had left the vehicle's driver door wide open and the engine running. At this point, Officer Taghon exited his patrol car, identified himself as a police officer and ordered Mr. Freeman to return to his vehicle. Mr. Freeman turned and began running away to the east while Officer Taghon yelled to Mr. Freeman, again identifying himself as a police officer and ordering him to stop running. Officer Taghon radioed that he was pursuing on foot the driver of the GEO Storm, who had abandoned the vehicle and was running away. Officer Taghon grabbed Mr. Freeman after a block and ordered him again to stop running. According to Officer Taghon, Mr.

Freeman refused to comply and continued to struggle. Since Mr. Freeman refused to stop struggling, Officer Taghan says, he began to place Mr. Freeman in a bar arm restraint pursuant to the St. Joseph County Police Department Force Continuum Policy, and verbally ordered him to place his other hand behind his back. Instead of complying, Mr. Freeman twisted away and started to run again. Officer Taghon grabbed him again and, in accordance with the St. Joseph County Police Department Policy, retrieved his oleoresin capisicum spray and gave two short bursts of spray to Mr. Freeman's face. Mr. Freeman then stopped trying to run and Officer Taghon forced him to the ground and placed him in handcuffs.

Meanwhile, after hearing the radio message, county Officer Teeter arrived at the place where Mr. Freeman had fled from his vehicle. Deeming the car abandoned, Officer Teeter began the process of impounding it pursuant to the Department's unwritten, but established, procedure of impounding and inventorying abandoned cars which constitute a traffic hazard. While conducting his inventory search, Officer Teeter found a coat lying on the vehicle's back seat and felt a solid object inside one of the coat's pockets. As he was trying to remove the object from the pocket, Michael Shlakman, Chief Investigator for the St. Joseph County Prosecutor, arrived at the scene and helped Officer Teeter remove a plastic bag containing a substance that appeared to be cocaine from

the lining of the coat. The coat pockets also contained ATM slips with the name De'Carlos Freeman on them.

Mr. Freeman's affidavit tells a very different story. Mr. Freeman says he was already parked and standing outside his vehicle when Officer Taghon pulled up and ordered him to stop because of a seatbelt violation. Mr. Freeman fled out of fear because Officer Taghon had made previous comments to Mr. Freeman that were "threatening in nature and intimidating." Mr. Freeman then surrendered and raised his hands in the air, at which point, Officer Taghon ran up to him and started spraying him in the face with mace. Officer Taghon then handcuffed Mr. Freeman, pushed him to the ground and began kicking him while shouting profanities such as, "f****** punk, my grandmother can take this sh**." Mr. Freeman also denies that Officer Teeter had probable cause to search his vehicle, as evidenced by the St. Joseph County Superior Court's finding in Cause No. 71D020-404FC00103 that the evidence was illegally obtained.

## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

4

matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on the mere allegations or denials contained in its pleading to overcome a motion for summary judgment. The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986).

To succeed under 42 U.S.C. § 1983, a plaintiff must show that "(1) he was deprived of a federal right and (2) that the deprivation was imposed upon him by one or more persons acting under color of state law." Ienco v. City of Chicago, 286 F.3d 994, 998 (7th Cir. 2002). Mr. Freeman brings three claims under § 1983. First, he claims that Officer Taghon detained him, or at least tried to detain him, without probable cause. Mr. Freeman contends that he already had parked and exited his car when Officer Taghon ordered him back in and informed him that he was being pulled over for a seatbelt violation. Mr. Freeman claims to have

5

been wearing a seat belt the entire time that Officer Taghon followed him and instead implies that he was detained because of unpleasant past experiences between himself and Officer Taghon.

A traffic stop will "violate the Constitution if it is deemed 'unreasonable' under the circumstances. A police officer's decision to stop an automobile will be considered reasonable, however, if the officer had probable cause to believe a traffic violation occurred." Valance v. Wisel, 110 F.3d 1269, 1275 (7th Cir. 1997). Officer Taghon contends that when he pulled directly behind Mr. Freeman's vehicle at the intersection of Darden and Laurel Roads, he saw that Mr. Freeman was not wearing a safety belt and proceeded to instigate a traffic stop for that reason. Indiana law requires motor vehicle passengers to wear safety belts when riding in a vehicle. IND. CODE 9-19-10-2. A court may conclude that "probable cause exited as a matter of law 'when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them'." Booker v. Ward, 94 F.3d 1052, 1058 (7th Cir. 1996) (*quoting* Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994)). The divergence between Mr. Freeman and Officer Taghon's recitation of the facts makes summary judgment on this issue inappropriate.

Mr. Freeman contends that Officer Taghon also violated his right to be free from unreasonable seizure by using excessive force to arrest him.

6

Officer Taghon argues that his use of force was reasonable since it was calculated only to subdue Mr. Freeman and place him in handcuffs. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Conner, 490 U.S. 386, 396 (1989), *(quoting* U.S. v. Place, 462 U.S. 696, 703 (1983)). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. at 396. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559 (1979); the question is "whether the totality of the circumstances" justifies the officers' actions. Graham v. Connor, 490 U.S. at 396, *(quoting* Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. at 396-

7

97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Id. at 396, *(quoting* Johnson v. Glick*,* 481 F.2d 1028, 1033 (2d Cir. 1973)). The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. at 397; Swanson v. Fields, 814 F. Supp. 1007, 1018 (D. Kan.), *affirmed,* 13 F.3d 407 (10th Cir. 1993) ("the test is not what in hindsight seems prudent, but it is what a reasonable officer would do in the heat of the moment"). Courts consider the totality of the facts confronting the officer and they begin their analysis from the moment the officer first has contact with the suspect "in order to place the officer's conduct in context." Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 592 (7th Cir. 1997).

The reasonableness of an officer's use of force is a question of law for the judge to decide, Bell v. Irwin, 321 F.3d 637, 640 (7th Cir. 2003)., but the reasonableness of an officer's conduct depends on the case's facts, and at the summary judgment stage, disputes about the facts must be resolved in the non-moving party's favor. Mr. Freeman and Officer Taghon have very different accounts of what happened between them on March 30, 2004.

Mr. Freeman claims that he surrendered before Officer Taghon maced, kicked and insulted him. Officer Taghon claims that he only used the bar arm restraint and chemical spray to stop Mr. Freeman from running away. That dispute is outcome-determinative. Officer Taghon further argues that the lack of injuries claimed by Mr. Freeman supports a finding of no excessive use of force. Absence of injury supports an assertion that no excessive force was used, but an excessive force claim does not require injury. Meyer v. Robinson, 992 F.2d 734,739 (7th Cir. 1993). Summary judgment is not appropriate at this time on the excessive force claim.

Lastly, Mr. Freedom contends the search of his car and the seizure of the object in his jacket violated the Fourth Amendment. Officer Teeter claims that when he came upon Mr. Freeman's vehicle it had been abandoned and constituted a traffic hazzard since it was parked five or six feet from the curb with the engine running and the driver's door wide open and protruding into the street. Officer Teeter also knew that Mr. Freeman wouldn't be able to drive the vehicle away because he would either be arrested by Officer Taghon or successfully flee the scene. After deciding to impound the vehicle, Officer Teeter began to conduct an inventory search pursuant to policy procedures for the purpose of safeguarding the items in the vehicle and protecting the law enforcement officers. While Officer Teeter was conducting the inventory search, he felt

9

a solid object inside a coat lying on the vehicle's backseat. This object was later confirmed to be cocaine. Mr. Freeman counters that Officer Teeter's description of the state of his vehicle is inaccurate, and that Officer Teeter had no probable cause to search the vehicle. Mr. Freeman asks the court to take judicial notice of the St. Joseph Superior Court's finding that Officer Teeter obtained the evidence illegally due to an illegal search and seizure.

The superior court's finding is not entitled to conclusive weight, because the officers were not parties to the state court proceedings and did not have a full and fair opportunity to litigate the issue. Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996). A warrantless inventory search is constitutionally permissible if: "(1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search satisfies the Fourth Amendment standard of reasonableness, *i.e.*, it is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." United States v. Velarde, 903 F.2d 1163, 1165 (7th Cir. 1990). Otherwise, the decision to impound and inventory a vehicle is only valid "if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots." U.S. v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996). Mr. Freeman swears he had parked his car before running from Officer Taghon; if the car was

parked, there seems to have been no reason to seize it and conduct an inventory search. The defendants, of course, disagree: they say the car was at least five feet from the curb, door open, and engine running. At the summary judgment stage, the court cannot resolve these fact issues. "In determining the reasonableness of an inventory search, we must be careful to balance the intrusion on the individual's fourth amendment rights against the promotion of legitimate governmental interests." U.S. v. Velarde, 903 F.2d 1163, 1166 (7th Cir. 1990).

The officers contend, nevertheless, that they are entitled to qualified immunity. Qualified immunity is immunity from suit rather than a mere defense to liability. Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Gregorich v. Lund, 54 F.3d 410, 413 (7th Cir. 1995). Government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining qualified immunity involves a two-step test. Saucier v. Katz, 533 U.S. at 199. First, the court decides whether, under the facts alleged by the plaintiff, the officers violated a constitutional right. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. at 201. If the

11

state of the law when the incident occurred would not put an officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

Mr. Freeman alleges that he had been wearing a seatbelt when Officer Taghon tried to stop him, so Officer Taghon lacked probable cause. Mr. Freeman then acknowledges that he fled from Officer Taghon, but he asserts that he then gave up the chase and held up his hands in surrender. He further alleges that he did not make any further attempts to resist Officer Taghon, but Officer Taghon nonetheless proceeded to spray him with mace, force him to the ground, and kick him. Mr. Freeman also alleges that he had already parked his car on the edge of the street when Officer Taghon approached him and that the car was not "abandoned" or parked in such a way that it was necessary for the police to impound the vehicle. The defendants offer no argument why these facts, if proven, would not amount to constitutional violations, or why reasonable police officers would not have known that the constitution does not allow them to arrest without probable cause, pepper spray and use a bar arm restraint on a subject that already surrendered to arrest, or (generally) seize and search an automobile parked at a curb minutes earlier. The defendants are not entitled to qualified immunity at this stage.

For the foregoing reasons, the court DENIES the defendants' motion for summary judgment (Doc No. 50).

SO ORDERED.

ENTERED:     March 14, 2007

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court